IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COBY WARREN,

       Petitioner,

v.                                                    CIV 07-1195 MCA/KBM

JAN GARTMAN, Warden, et al.,

       Respondents.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

      This matter is before the Court on Coby Warren's petition seeking habeas relief under 28 U.S.C. § 2254 and various other motions, as well as Respondents' Answers to the petition and responses to some of the motions. *See Docs. 1, 6, 7, 13-15, 17-21.* Unless otherwise noted, all citations to exhibits are those attached to Respondents' Answers. *See Docs. 14, 21.* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") standards apply to this case. *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997). All of the issues can be resolved on the record and, therefore, an

evidentiary hearing is unnecessary.  *E.g., Schriro v. Landrigan,* ___ U.S. ___, 127 S. Ct. 1933, 1940 (2007); Rule 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.

## I.  Background

This matter is in an unusual posture.  Petitioner was convicted of various crimes related to domestic violence, sentenced, and later returned to prison after a probation violation.  The four separate criminal matters were not consolidated into one proceeding or judgment, and some of the forms connected with the proceedings contain clerical oversights that were not corrected by the state court or clerk on their own initiative.  *See Exhs. A-J.*  Warren conflates those oversights into constitutional dimension and, as evidenced by his later motions for "injunctive" relief and "bail," he seeks habeas relief from this Court in the form of "absolute discharge" from his sentence.  *See Doc. 1* at 6, 9; *Doc. 1-2* at 3, 7, 11, 22, 23, 28, 44, 45; *Doc. 1-3* at 4, 17; *Doc. 7* at 1; *Doc. 12* at 1; *Doc. 15* at 1.

Meanwhile, in his state proceedings, Petitioner was seeking a recalculation of his sentence.  *See, e.g., Exhs. W, X.*  All of the substantive arguments he raises in Claims 1 through 6 of the federal petition were rejected on the merits, but the New Mexico Supreme Court did remand for a determination of whether Warren

received the proper credit for time served on probation. The state district court recently held a hearing where Warren appeared by telephone and was represented by counsel, and the judge recalculated Warren's sentence. Not completely satisfied with this calculation, Warren continued in the state courts arguing he was due additional "good time" credits. That contention was rejected, and the proceedings have just concluded. *See, e.g., Exhs. FF, JJ, MM, NN.* I agree with Respondents that these later state proceedings have no bearing on the federal suit.

The case before me has taken some turns as well. When Respondents asserted that Petitioner had not exhausted Claims 7 through 9, Petitioner agreed. He thus moved to voluntarily dismiss those counts, and Respondents consented to the voluntary dismissal. *See Doc. 14* at 4; *Doc. 18* at 1; *Doc. 20* at 1. Petitioner's latest pleading, however, evidences a desire to recant the voluntary dismissal because of perceived deficiencies in Respondents' Answers, including that they have not indicated what state procedures are available. *See Doc. 19* at 1-3.

## II. AEDPA Standards Of Review

If a state court addresses a claim on the merits in summary fashion the AEDPA standards still apply. The focus is on the state court's result. Otherwise, the review is *de novo*. *E.g., Brown v. Sirmons,* 515 F.3d 1072, 1087 (10th Cir. 2008);

*Stevens v. Ortiz,* 465 F.3d 1229, 1234-35 (10th Cir. 2006), *cert. denied sub nom,  Zavaras v. Stevens,* ___ U.S. ___, 127 S. Ct. 1833 (2007).[1] When an unexhausted claim is "easily resolvable against the habeas petitioner," this Court may deny the claim on the merits, and I find it is appropriate to do so. *E.g., Lambrix v. Singletary,* 520 U.S. 518, 525 (1997); 28 U.S.C. § 2254(b)(2). Here, all of Petitioner's claims are utterly without merit, regardless of whether the review is under AEDPA or *de novo.*

## III.  Analysis

Speedy "Trial." In Claim 1, subsection "A," Warren asserts that his case did not go to trial within 182 days as required under New Mexico Rule 6-506 since he was "charged in the alleged Domestic Counts on October 21st 2004, but was not offered an alleged plea agreement until October 27th, 2005." *Doc. 1* at 6. As the docket sheet reflects, however, trial was set several times within the 182-day time period, and the delay in concluding the proceedings was occasioned by several changes in defense counsel or other motions by the defense.[2] Since the entire time

---

[1]  A federal court cannot grant an "application for a writ of habeas corpus" unless the state decision was (1) "contrary to" or an "unreasonable application" of "clearly established" Supreme Court precedent or (2) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

[2]  *See Docket Sheet M-26-VR-200400190* (entries as follows: 12/20/04 – substitution of counsel; 1/26/05 – another substitution of counsel and waiver of jury trial; 3/8/05 – withdraw of

4

barely exceeded one year, I find no presumptive prejudice or other prejudice.[3]

Clerical Errors.  The remainder of Claim 1 and Claims 2, 4, and 7 are based on clerical errors.  The forms used for his sentence and plea provide preprinted options to be selected such as:   [guilty] [no contest], or [state] [county] [city], or [court] [jury].  The selections were not made in some instances.  Warren asserts that some of these mistakes violate state rules, but even if these errors violate state law, they are not a basis for habeas relief.  *E.g., Estelle v. McGuire,* 502 U.S. 62, 67 (1991).

As for his invocation of constitutional provisions, the clerical errors were in a sense "cured" by other entries.  In Claim 1, subsection "C," Warren asserts that by failing to indicate on the plea agreement whether he pleaded guilty or no contest he was denied "due process and equal protection of the law."  *Doc. 1-2* at 3.  In Claim 1, subsection "B," he asserts that he was sentenced "in double jeopardy"

---

counsel; 3/22/05 through 3/23/05 – public defender again appointed and motion for continuance of trial granted and trial reset; 5/2/05 through 8/25/05 – defense motion for competency determination granted, conducted, and defendant found competent; 10/14/05 – motion for continuance of trial granted and trial reset).  The docket sheets attached to various pleadings by Plaintiff and Respondents and are also available online.

[3] *See, e.g., Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992); *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972); *Elston v. Roberts,* 232 Fed. Appx. 824, 827 (10th Cir. 2007) (delays of four, five, and seven and a half months are not presumptively prejudicial); *Metoyer v. Scott,* 70 Fed. Appx. 524, 530 (10th Cir. 2003) ("For purposes of this case, we assume presumptive prejudice for the fifteen-month delay.").

because his plea and disposition agreement does not indicate whether the plea was guilty or no contest. *Doc. 1* at 9. Notwithstanding the oversight in the plea agreement, the docket sheets and subsequent judgments and amended judgments to the original charges indicate that the plea was "no contest."[4] Furthermore, the judgment for the probation violation charge indicates that Warren pleaded not guilty. *Exh. J.* In Claim 2, Warren points out that the plea agreement failed to indicate whether it was the state, county or city with which he made the agreement. *Doc. 1-2* at 7. Nevertheless, the caption of the plea agreement shows the "State of New Mexico County of Lea Magistrate Court State Of New Mexico" was the prosecuting authority. In Claim 7, Warren asserts that neither a "court' nor a 'jury'" was the entity that found him guilty of the probation violation, "thus making the probation revocation sentence illegal." *Doc. 1-2* at 45. Yet, it is plain from the docket sheet that it was the court that found him guilty. Finally, in Claim

---

[4] *See Docket Sheets M-26-VR-200400190* (claim of contempt of court dismissed and remaining violating order of protection claims disposed by "guilty/no contest plea"), M-26-VR-200400286 (claim of contempt of court dismissed and remaining violating order of protection claim disposed by "guilty/no contest plea"); *M-26-VR-200400301* (claim of violating order of protection disposed by "guilty/no contest plea"), *M-26-VR-200400303* (two of three charges dismissed by prosecutor and court, remaining claim of violating order of protection disposed by "guilty/no contest plea"); *Exhs. B-E* (original judgment and sentence forms entered for these cases showing plea was "nolo contendere" and accepted by the court "as an admission of guilt for the purpose of this action only); *Exhs. F-I* (amended judgment and sentence forms entered for these cases after probation violation proceedings concluded; complete entries associated with the probation violation proceedings themselves noted on docket sheet of lead case – "190" only ).

4, Warren faults the plea agreement for not having been dated by the judge when he signed it. *Doc. 1-2* at 22. The file stamp date serves that purpose, however, and it is the same date as when Warren and the attorneys signed the agreement and the date the plea hearing was conducted. *See Exh. A; Docket Sheets.*

Notwithstanding Warren's characterizations, none of these allegations implicate double jeopardy, due process or equal protection. Nor do they raise any sort of claim of constitutional magnitude that warrants federal habeas relief.

Initial Hearing In Probation Revocation Proceedings. Claims 5 and 6 are related. In Claim 6, Warren asserts that he "was not provided minimum due process of law as stated in '*Morrissey v. Brewer,* 408 U.S. 471 (1972)' and '*Gagnon v. Scarpelli,* 411 U.S. 778 (1972)'." *Doc. 1-2* at 44. *Morrissey* announced the procedures that must accompany parole revocation proceedings to satisfy due process. *Gagnon* applied those to probation revocation proceedings. Thus, a "probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*." *Gagnon,* 411 U.S. at 782. The conditions are twofold: a "preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Id.*

Warren is challenging the preliminary hearing aspect only, and in Claim 5 asserts that he was not provided "an arraignment on the Bench Warrant for the probation violation warrant issued February 20th, 2006, and was never provide[d] an arraignment prior to the revocation held June 23rd, 2006." *Doc. 1-2* at 28. His claim thus gives the impression that he was left to languish incommunicado in jail for four months. That is not the case, as the documents Warren himself provided with the federal petition do not support his position.

First, Warren submitted the docket sheet from one of the companion cases rather than the lead case, and that docket sheet thus does not contain the entries detailing all of the proceedings leading up to the probation revocation. *See id.* at 29-34 (case "301"); *supra* note 5 complete entries associated with the probation violation proceedings themselves noted on docket sheet of lead case – "190" only ). It is true that this companion case docket sheet does give the impression that the judgment was amended in light of the revocation one day before the probation revocation hearing was actually held. *See Doc. 1-2* at 34. But when viewed in context of the docket sheets for the other three cases, this is plainly nothing more than an uncorrected typographical error.

More importantly, Warren's own records demonstrate that he was provided the initial hearing contemplated by *Gagnon* and New Mexico State Rule 5-805(G).

8

When he grieved his alleged lack of an arraignment, Warren stated to prison officials that he was arrested on March 31, 2006. *See id.* at 35. I take judicial notice that this fell on a Friday. Warren's other prison documents show that he was transported to court at 7:55 a.m. on Monday April 3, 2006, for a Magistrate Court hearing. He was back in jail at 11:30 that morning. *See id.* at 35-37. Thus, he spent the weekend in jail before his initial hearing. The docket sheet in the lead case bolsters that conclusion. It shows that the first entry after the February 20th motion to revoke probation and bench warrant issuance, was made on April 4, 2006. On that date, one day after Warren was transported to court, the court appointed counsel for him and set the probation violation hearing for April 28, 2006. Counsel entered an appearance for Warren on April 12, 2006, and, on the eve of the scheduled hearing, moved for a continuance. Later, counsel was granted another continuance and the hearing finally took place on June 23, 2006. *See Docket Sheet M-26-VR-200400190* (entries 2/20/06 through 6/23/06); *see also Doc. 1-2* at 38-41 (copies of court hearing notices scheduling, then rescheduling probation revocation hearing).

   Finally, even if the initial hearing were not held, I find no basis for habeas relief because the lack of a initial hearing is harmless under these circumstances. Warren had a probation revocation hearing, does not challenge the merits of the

9

decision to revoke his probation, and does not allege or demonstrate prejudice as a result of allegedly not having an initial hearing.[5]

Concurrent vs. Consecutive Sentences. The remainder of the claims concern whether sentences were to run concurrent or consecutively. In Claim 3, Warren asserts that, if the plea was valid, "then the sentences were to be served concurrent and not consecutively" because the plea agreement did not mention anything about how the sentences would run. *Doc. 1-2* at 11. This makes no sense. An absence of an agreement as to sentence did not, and would not, bind the

---

[5] *See, e.g., Dunlap v. Ledbetter,* 2005 WL 2138242 at * 4 (W.D. Mo. 2005) ("Furthermore, even if the fact that no preliminary hearing was held constitutes a due process violation, any error was harmless. Petitioner has presented no evidence supporting his contention that the outcome of the final revocation proceeding would have been different had he been afforded a preliminary hearing."); *Moten v. Dretke,* 2004 WL 1969410 at * 2 (N.D. Tex.) ("Petitioner does not challenge the final parole revocation, but instead argues that he was not given a preliminary examination. In *Collins v. Turner,* 599 F.2d 657, 658 (5th Cir. 1979), the court held that when a petitioner is given an evidentiary hearing prior to the final revocation of his parole, the preliminary hearing is not necessary. In such a case, the preliminary hearing had no relation to his incarceration. *Id.* Petitioner had an evidentiary hearing before his parole was revoked. His present incarceration is the result of the final revocation hearing, and the lack of a preliminary hearing is at most, harmless error. Petitioner's claim is without merit."), *report and recommendation adopted,* 2004 WL 2186729 (N.D. Tex. 2004); *Vashey v. Wall,* 2004 WL 1242548 at * 5 (D.R.I. 2004) ("*Gagnon* and *Morrissey* are primarily concerned with ensuring that an alleged probation/parole comprehensive final revocation hearing is sufficient to satisfy the due process clause. However, nothing in *Gagnon* nor *Morrissey* prohibits a state from combining those hearings into one, prompt full hearing, where all the rights set forth in *Gagnon* and *Morrissey* are provided. The U.S. Supreme Court, while stating that a prompt probable cause hearing should occur upon arrest and detention of an alleged probation violator, does not forbid the state to have, in its stead, a prompt full hearing where the alleged violator is afforded all of the rights enunciated in *Gagnon* and *Morrissey*. No probable cause hearing is required where a prompt, full hearing was scheduled to commence, as here.").

10

district judge to any particular course in sentencing.  No federal constitutional principle holds to the contrary.

In Claim 8 he maintains that the sentences after revocation were to run concurrently.  *Doc. 1-3* at 4.  In Claim 9, as I understand it, Warren is asserting that the state court entered a "corrected" judgment within minutes of entering the original amended judgment and these two entries do not clearly indicate that the sentences were to run consecutively.  The record does not bear out these assertions.

First, there is no difference in substance to the two judgments Warren submitted, save for the style of the stamp.  One is plainly the file stamp with the time and date, and the other is largely illegible and looks to me to be a copy stamp.  Regardless, it turns out that, unlike other portions of forms that were not executed, the mode of sentence section was one place where each and every form was filled out.  Every judgment and the docket entries accompanying them, entered from the first judgment through revocation, indicated that the sentences were to run consecutively, either by bold type or by underlining/strike out.  *See Exhs. B-J.*  Petitioner's submissions show exactly the same.  *See Doc. 1-3* at 18-20, 22-24.

Injunctive Relief.  Warren's motion for "injunctive" relief primarily reiterates the background of the state proceedings.  *See Doc. 7.*  Respondents argue

that the New Mexico statute Warren cites as grounds for an "absolute discharge" from his sentence has been preempted by the state rule authorizing state habeas relief, and it is not clear why the statute has been retained. They also mention that whether state remedies have been exhausted has not been determined. *See Doc. 15 at 1-2.* Warren moves to strike this response. *See Doc. 17.*

Respondents do not address the substance of the two assertions raised in the motion for injunctive relief. The first is a reiteration of a claim mentioned in the petition – that the "Magistrate Court was without jurisdiction to file the amended judgement and sentence in cause #190 on August 31,$^{st}$ 2006, because Petitioner had filed a notice of appeal August 23,$^{rd}$ 2006." *Doc. 7 at 4; see also Doc. 1-3 at 17* ("the Court was without jurisdiction to amend that sentence since clearly notice of appeal had been filed August 23,$^{rd}$ 2006."). However, the docket sheet for the lead case shows no appeal as of that time. Neither does the companion cases "303," "301," or "286." In fact, the lead case shows that the appeal was concluded on August 15, 2006, when the district court filed the New Mexico Supreme Court's August 11, 2006 remand order. *See Docket Sheets.*

Warren also asserts that the amended order entered after the remand filed on August 31, 2006, only pertains to the lead case and does not include the other three cases. This assertion simply reiterates the consecutive/concurrent issue

12

rejected above. Like all the other judgments, the sentences are consecutive. *See Exh. J.*

     Bail. Citing a rule that I have been unable to locate in state or federal sources, Warren asks this Court to grant him bail pending decision on this federal petition. *See Doc. 12.* Respondents cite a federal criminal statute for proposition that bail is not available for those who are incarcerated. *See Doc. 13* at 1 (citing 18 U.S.C. § 3141). Neither the constitution, the federal habeas statutes, nor the federal habeas rules authorize that remedy while a federal habeas petition is pending. *See* 28 U.S.C. §§ 2241-2254; RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.

     Counsel. Warren moved the Court for appointment of counsel. *See Doc. 6.* There is no constitutional right to counsel in habeas proceedings and the decision whether the appoint counsel is left the court's discretion. Ordinarily, there is no reason to appoint counsel unless the case has reached the stage of the proceedings where an evidentiary hearing is required. *See e.g., United States v. Leopard,* 170 F.3d 1013 (10th Cir. 1999) (§ 2255 case); *Swazo v. Wyoming Dept. of Corrections,* 23 F.3d 332 (10th Cir. 1994) (§ 2254 case); *see also Karls v. Hudson,* 182 F.3d 932 (10th Cir. 1999) (unpublished) (§ 2241 case), *cert. denied,* 120 S.Ct. 449 (1999). For the reasons above, this case will not reach that stage and, accordingly,

appointment of counsel should be denied.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1. Warren's motion to consider the entire petition *(Doc. 19)*, be granted, and his earlier motion to voluntarily dismiss Claims 7 - 9 *(Doc. 18)* be stricken;

2. Warren's motion to dismiss Respondents' Response *(Doc. 17)* be denied;

3. Warren's motion for "injunctive" relief *(Doc. 7)* be denied;

4. Warren's motion for "bail" *(Doc. 12)* be denied;

5. Warren's motion for appointment of counsel *(Doc. 6)* be denied; and

6. Warren's § 2254 petition *(Doc. 1)* be denied.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE